FILED

**August 1, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:58 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **DANIEL FLORA,** | ) | **Docket No.: 2015-07-0327** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | |
| **NSK STEERING SYSTEMS** | ) | **State File Number: 75497-2015** |
| **AMERICA, INC.,** | | |
| **Employer,** | ) | |
| | ) | |
| **And** | ) | |
| **SOMPO JAPAN INSURANCE,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS AND DENYING TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on June 28, 2016, upon the Request for Expedited Hearing filed by Daniel Flora pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, NSK Steering Systems, is obligated to provide workers' compensation benefits.

The present focus of this case is whether Mr. Flora is likely to prevail at a hearing on the merits establishing an injury to his low back that arose primarily out of and in the course and scope of his employment and if so, whether he is entitled to temporary disability benefits. For the reasons set forth below, the Court holds Mr. Flora came forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits establishing an injury to his low back; thus, he is entitled to a panel of orthopedic physicians. However, the evidence was insufficient to establish he would prevail at a hearing on the merits regarding entitlement to temporary disability benefits.

**History of Claim**

Mr. Flora is a twenty-nine-year-old resident of Gibson County, Tennessee. He worked as a material handler for NSK Steering in Dyersburg, Tennessee supplying lines with proper parts. Mr. Flora alleged a work-related injury to his back on September 17, 2015. NSK denied the claim on September 29, 2015, contesting the validity of the reported incident.

In support of his claim for workers' compensation benefits, Mr. Flora provided the following testimony concerning the alleged injury:

On September 17, 2015, Mr. Flora supplied parts to the Pilot line.[1] He loaded "J-shafts" measuring one to two feet long onto a rack, and stacked the racks on a cart.[2] Mr. Flora described a black plastic skid on the floor with a two-inch lip that held parts on the skid. While loading racks on the cart, with one foot on the ground and one foot on the skid, Mr. Flora's foot caught the lip of the skid and he lost his balance. He caught himself with the cart, which fell over and caused seven parts to fall. Mr. Flora attempted to grab the falling parts when his back popped and his leg went numb.[3] No one witnessed his injury.

Following the accident, Mr. Flora testified that his coworker, Amber Robertson, who worked as a floater that day, came over, picked up the fallen parts, and called their supervisor, Evan Sanders. Mr. Flora stated Ms. Robertson was supposed to document the fallen parts. Mr. Sanders arrived at the scene approximately two to three minutes later. Mr. Flora reported the injury to Mr. Sanders, who subsequently completed an NSK Employee Incident Report with the information reported by Mr. Flora. (Ex. 9.) Mr. Sanders described the incident by stating, "as he turned his body his foot slipped and caused back strain." Mr. Flora disputed the description of injury where it stated his foot "slipped." He testified he told Mr. Sanders his foot "caught" the lip of the skid. Mr. Flora went to see Jessica Acosta, NSK's EHS Specialist, who administered first aid.

The following day, Mr. Flora prepared a NSK Report of Injury or Illness form. (Ex. 3.) In this report, he also described a foot slip on the skid leading to his back injury. While Mr. Flora testified at the Expedited Hearing that his foot was "caught," he acknowledged that he stated his foot "slipped" in his own report of the injury. NSK offered him a panel of physicians from which he selected Hometown Urgent Care for treatment. (Ex. 5.)

Mr. Flora saw Tracie Woodward, NP, at Hometown Urgent Care the same day.

---

[1] The Court notes the testimony indicated NSK manufactured steering parts for automobiles.

[2] NSK referred to the parts as "I-shafts," which stands for intermediate shaft. The Court understood the "J-shafts" and "I-shafts" to be the same part.

[3] The Court notes Mr. Flora did not indicate which leg went numb.

2

(Ex. 1.) He gave a history of his work-related back injury. Ms. Woodward noted, "[P]t caught some shafts that were falling and hurt his low back." *Id.* He denied any other injury to his back. Following a physical exam, Ms. Woodward diagnosed a low-back strain. She recommended conservative treatment consisting of ice and heat. *Id.* Mr. Flora returned to Ms. Woodward for follow-up three days later on September 21, 2015, still complaining of back pain. At this visit, Ms. Woodward referred him to Dr. Michael Calfee, an orthopedist, for further treatment. *Id.* No further medical records regarding any additional treatment were admitted into evidence at the Expedited Hearing.

Following his injury, Mr. Flora performed light duty work sweeping floors until September 30, 2015, when NSK terminated him for violation of company policy. He did not miss any work until his termination. Mr. Flora stated he is unable to work presently because of his back injury. On cross-examination, Mr. Flora conceded he drew unemployment benefits following his termination. He admitted he was not truthful with the unemployment office when he certified on the form that he was able to work and was looking for work. Mr. Flora explained he needed unemployment benefits to pay his child support obligation. Mr. Flora asserted he testified truthfully at the Expedited Hearing. On re-direct examination, Mr. Flora explained that when he said he could not work because of his injury, he meant he could not do the physical requirements of his previous material handler position at NSK. He believed he could have performed office work or counted parts.

At the hearing, Mr. Flora complained of continued back pain and stated, "some days are better than others." If he sits or stands too long, his leg goes numb. Mr. Flora testified he sought emergency treatment on his own at Baptist Hospital in Union City due to throbbing pain in his back and leg.[4] The physicians gave him a shot and prescribed pain medication and home exercises. Mr. Flora did not seek any additional treatment because he could not afford it. He denied any back injury or pain in his leg prior to the work injury on September 17.

For its case, NSK offered the testimony of Evan Sanders, Jessica Acosta, and Matt Brents. The details of this testimony differ in some ways from Mr. Flora's testimony.

Mr. Sanders works as the material control lead-team tech for NSK. On September 17, 2015, he directly supervised Mr. Flora. Mr. Sanders learned of Mr. Flora's alleged injury when Ms. Robertson called him by radio to come to the line. Mr. Sanders arrived at Mr. Flora's work-station and Ms. Robertson was there with Mr. Flora. Mr. Flora appeared in pain and held his back.

Mr. Sanders disputed two specific points in Mr. Flora's testimony concerning the

---

[4] The Court notes Mr. Flora did not offer the Baptist Hospital record into evidence at the expedited hearing or provide a date for his emergency room visit. The Court understood the testimony to indicate he went to the ER sometime subsequent to his termination from NSK.

alleged injury. First, Mr. Sanders denied seeing the seven I-shafts on the floor around Mr. Flora's immediate work area when he arrived at the scene. He also interviewed coworkers in the area and stated no one witnessed or documented any parts on the floor at Mr. Flora's work-station that day. Mr. Sanders explained NSK has a quality control policy concerning dropped parts called "stop, call, and wait." Had any parts fallen on the floor, the procedure requires employee to stop, call a supervisor, and wait, leaving everything in place. The supervisor documents the dropped parts and determines what to do with the dropped parts in case they are damaged. On cross-examination, Mr. Sanders testified he did not ask Ms. Robertson or Mr. Flora if they picked up the dropped I-shafts.

Mr. Sanders also disputed Mr. Flora's testimony that he told him his foot "caught" the lip of the skid at the time of injury. Mr. Sanders testified Mr. Flora originally stated his foot "slipped" and he wrote down the description of incident on the NSK Employee Incident Report exactly as Mr. Flora told him.

Matt Brents is the production control manager at NSK. On September 17, 2015, Mr. Brents reported to Mr. Flora's work-station within thirty-minutes of the accident. Mr. Brents testified he did not see any I-shafts on the ground at Mr. Flora's work-station at that time. He also interviewed coworkers in the area who did not see any I-shafts on the ground.

Ms. Acosta is NSK's EHS Specialist. The day after the reported injury, Ms. Acosta met with Mr. Flora at his work-station to investigate how the accident happened in order to develop countermeasures to prevent future injuries. She asked him to re-enact his injury. Ms. Acosta testified Mr. Flora had difficulty recreating his injury. He was vague and could not recreate catching his foot. He told her he was in pain and could not do it. She prepared an NSK Incident Analysis Report and documented her findings. (Ex. 10.) Based upon her discussion with Mr. Flora, Ms. Acosta questioned the validity of his claimed injury. Ms. Acosta took photographs of the skid during her investigation and, pursuant to Mr. Flora's request, offered the photos into evidence as a late-filed exhibit. (Ex. 22.)

NSK also admitted affidavits into evidence from employees Joey Taylor, Christle Cannon, Cedric Higgs, Theresa Ballentine, and Lisa DeSpain. (Ex. 11-15.) Mr. Taylor, Ms. Cannon, and Mr. Higgs acknowledged the company's procedure for dropped I-shafts and asserted they did not witness Mr. Flora's injury or see any scrapped I-shafts on the floor from the pilot line.[5] Ms. Ballentine is the HR manager for NSK and asserted she interviewed Amber Robertson on September 17, 2015, who denied seeing anything. Ms. DeSpain is the senior HR Generalist for NSK who prepared Mr. Flora's separation notice and asserted he was terminated for corrective actions being in contradiction of NSK's

---

[5] The Court notes the affidavits did not indicate the affiants' job positions at NSK or their proximity to Mr. Flora's work-station.

point system.

Following NSK's investigation of the alleged work-injury, it denied Mr. Flora's workers' compensation claim on September 29, 2015, one day prior to terminating him. (Ex. 7.)

Mr. Flora filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. Flora filed a Request for Expedited Hearing.

At the Expedited Hearing, Mr. Flora asserted he sustained a work-injury to his back and needs additional medical treatment. He argued that after making a claim for worker's compensation benefits and initially being provided medical treatment, NSK wrongfully denied his claim, and terminated him one day later. Mr. Flora also claimed entitlement to temporary disability benefits from his termination date of September 30, 2015, until he is treated and released by a physician.

NSK countered that Mr. Flora did not meet his burden of establishing a compensable injury. It disputed Mr. Flora's description of the alleged incident based primarily upon Ms. Acosta's investigation, the testimony of NSK's witnesses that no I-shafts were on the ground at his work-station, and Mr. Flora's changing description of whether his foot slipped or was caught on a skid. NSK further argued that Mr. Flora is not entitled to temporary disability benefits because he worked up until his termination for cause and would have continued working but for his own violation of NSK's policy.

**Findings of Fact and Conclusions of Law**

At the outset, the Court notes the most disputed issue at the Expedited Hearing concerned the appropriateness of Mr. Flora's termination, which is relevant only to Mr. Flora's claim for temporary disability benefits. The parties gave extensive and sometimes unclear testimony regarding the circumstances leading up to Mr. Flora's termination for cause. Mr. Flora argued he was wrongfully terminated following his report of a work injury; thus, he is entitled to temporary disability benefits from his termination date until he is released by a doctor. NSK argued it terminated Mr. Flora for violation of NSK's point system, which was unrelated to his alleged work injury. NSK's witnesses testified that Mr. Flora's termination resulted from his production problems prior to September 17, 2015, his attendance issues, his violation of company policy for smoking in an unauthorized area, and Mr. Brent's observation of Mr. Flora taking an unauthorized extended break. Based upon the following findings of fact and conclusions of law, the Court finds it need not address this controverted testimony at this time as it is not

5

dispositive to the outcome at this interlocutory stage.[6]

*Compensability*

In general, Mr. Flora, bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, Mr. Flora need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

Mindful of the foregoing, the Court first considers whether Mr. Flora is likely to prevail at a hearing on the merits regarding the compensability of his claim. Generally, to be compensable, an injury must arise primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14) (2015). Mr. Flora must show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Upon thorough consideration of the conflicting testimony in this case, the Court finds Mr. Flora came forward with sufficient proof of a specific incident, identifiable by time and place of occurrence, from which this Court may conclude he is likely to prevail at a hearing on the merits on this issue. Specifically, Mr. Flora credibly testified that while loading racks on the cart, with one foot on the ground and one foot on the skid, his foot caught the lip of the skid and he lost his balance. He caught himself with the cart, which fell over and caused parts to fall. Mr. Flora attempted to grab the falling parts when his back popped and his leg went numb. Mr. Flora immediately reported the injury to Mr. Sanders and Ms. Acosta. He also gave a consistent report of the injury later that day to Ms. Woodward, the nurse practitioner he saw at Urgent Hometown Care.

The Court agrees with NSK that Mr. Flora's initial description that his foot

---

[6] Relevant to the issue of temporary disability, NSK introduced into evidence an email from Lana Nichols to Lisa DeSpain, copying Evan Sanders, on September 17, 2015. The Court heard both parties regarding its admissibility, marked it for identification only, and reserved ruling. Mr. Sanders testified the email documented a meeting he had with Mr. Flora on or about September 8, 2015, concerning Mr. Flora's job performance issues with production. The document was kept in Mr. Flora's personnel file as a business record. Mr. Flora's counsel objected to the email on hearsay grounds. The Court finds the email is admissible as a business record.

6

"slipped" in his accident report was inconsistent with his subsequent statement the following day that his foot actually "caught" the lip of the skid. However, the Court finds this to be a minor discrepancy and does not discredit his otherwise consistent testimony regarding his injury. Further, the Court notes Mr. Sanders observed Mr. Flora to be in pain and holding his back when he arrived shortly after the accident. Ms. Acosta also testified that Mr. Flora complained of difficulty recounting the specific details of his injury the next day due to pain in his back. The Court finds it reasonable in this case to conclude that Mr. Flora's back pain likely accounted for the discrepancy regarding his foot placement.

The Court also credited Mr. Flora's testimony on the issue of the fallen I-shafts. In analyzing this testimony, the Court notes it was undisputed that Ms. Robertson was the first person to Mr. Flora's work-station following his injury. Mr. Flora testified Ms. Robertson picked up the parts and was supposed to document the fallen I-shafts. Ms. Robertson did not testify at the Expedited Hearing or provide an affidavit regarding her involvement immediately following Mr. Flora's injury. The Court notes Mr. Sanders interviewed coworkers to see if they saw any I-shafts on the ground; however, he conceded he did not ask Ms. Robertson at the scene of the accident if she picked up the I-shafts. The Court affords little weight to the employee affidavits regarding the I-shafts. The Court notes the affidavits of Joey Taylor, Christle Cannon, and Cedric Higgs did not indicate their job position, where they worked in the facility, their proximity to Mr. Flora's work-station, or when they looked on the ground at his work-station. Based upon the totality of the proof at the Expedited Hearing, the Court resolves the issues raised by NSK concerning the veracity of Mr. Flora's reported injury in favor of Mr. Flora.

Turning to the medical proof before the Court, NSK argued, and the Court agrees, that the two records from Nurse Practitioner Woodward at Hometown Urgent Care fail to prove Mr. Flora's back condition arose primarily out of and in the course and scope of his employment. However, Mr. Flora does not have to prove compensability by a preponderance of the evidence to establish NSK's obligation to provide a panel of physicians from which he may choose an authorized physician. *McCord, supra*, at *16-17. In *McCord*, the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her *burden at this interlocutory stage* to support an Order compelling Employer to provide a panel of physicians.

*Id.* at *17 (emphasis added). Based upon the foregoing, the Court holds Mr. Flora provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he is entitled to a panel of orthopedic physicians as NP Woodward recommended. As a result,

NSK is ordered to provide a panel of orthopedic physicians within Mr. Flora's community from which he may choose an authorized physician in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015).

*Temporary Total Disability*

The Appeals Board reiterated the longstanding criteria for temporary disability benefits as follows: "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), *citing Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978).

Here, the medical records admitted into evidence from Hometown Urgent Care do not place Mr. Flora off work or on work restrictions. Absent such information, the Court finds there is no evidence establishing any period of temporary disability. Thus, the issue of whether Mr. Flora's termination for cause precludes his entitlement to temporary disability benefits need not be addressed at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. NSK shall provide a panel of orthopedic physicians from which Mr. Flora may choose an authorized physician for evaluation, and if necessary, treatment of his alleged back injury in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015).

2. Mr. Flora's request for temporary disability benefits is denied.

3. **This matter is set for an Initial (Scheduling) Hearing on September 26, 2016 at 10:00 a.m. Central Time.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers'

Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 1st day of August, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Amber Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

9

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical Records of Hometown Urgent Care;
5. Affidavit of Daniel Flora;
6. NSK Report of Injury or Illness;
7. Form C20, Employer's First Report of Work Injury or Illness;
8. Form C-42, Agreement Between Employer/Employee Choice of Physician;
9. Form C-41, Wage Statement
10. Form C-23; Notice of Denial of Claim for Compensation;
11. Separation Notice;
12. NSK Americas Employee Incident Report;
13. Safety Department Incident Analysis Report;
14. Affidavit – Lisa DeSpain;
15. Affidavit – Joey Taylor;
16. Affidavit – Christle Cannon;
17. Affidavit – Cedric Higgs;
18. Affidavit – Theresa Ballentine;
19. Employee's Response to Employer's Pre-Litigation Discovery to Employee;
20. Evan Sander's note documenting telephone calls regarding line shutdowns;
21. Gary Huddlestone's Memo to Evans Sanders dated September 16, 2015;
22. Employer's point accumulation chart for Mr. Flora;
23. Employee Refusal of Medical Treatment Form;
24. Matt Brent's time study memo; and,
25. Late Filed Exhibit – Ms. Acosta's photos of re-enactment of Mr. Flora's foot placement and lip of pallet.

Documents Marked for Identification Only:
1. Email dated September 17, 2015, from Lana Nichols to Lisa DeSpain

Technical record:[7]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Initial Hearing;
4. Order Granting Withdrawal of Request for Initial Hearing;
5. Request for Expedited Hearing;
6. Employee's Position Statement;
7. Employer's Position Statement; and,

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

11

8. Employer's Supplemental Position Statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 1st day of August, 2016.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| William A. Wooten., Esq., Employee's Counsel | | X | wawooten@gmail.com |
| Brett Burrow, Esq., Employer's Counsel | | X | bburrow@burrowlee.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov